So we'll hear Counselor DeFalco against MTA Bus Company. Good morning. May it please the Court. Jessica Harris for Plaintiffs Appellants Anthony DeFalco and Eric Trentel. This case concerns the arrest and prosecution of plaintiffs Anthony DeFalco and Eric Trentel, MTA Bus Company employees, by MTA Police Department Detective Brian Longaro based on the allegation of MTA Bus Foreman Francis Bristow that plaintiffs stole bus batteries from JFK Bus Depot on December 8, 2012. The criminal charges against the plaintiffs were dismissed on speedy trial grounds. The District Court granted summary judgment to the defendants, reaching only one issue with respect to each defendant, and this Court need go no further. With respect to Bristow, the Court held that as a matter of law, Bristow did not act under color of state law for purposes of Section 1983 when he provided MTA Police with what a reasonable jury could find was false information leading to the arrest and prosecution of the plaintiffs. With respect to Longaro, the District Court held that as a matter of law, Longaro had probable cause to arrest and prosecute the plaintiffs. I will address each of these issues in turn. Beginning with Bristow, the District Court held that Bristow did not act under color of state law because in order to do so, he was required to, but did not, abuse his authority under state law, and that additionally, his conduct would have been no different had he been employed by a private entity. These are not the criteria for establishing conduct under color of state law. What are the criteria for a situation like this? It's kind of an employment situation. I know there's criminal arrests afterward, but when does a supervisor like Bristow become a state actor for these purposes that, you know, there's a lot of state entities like the MTA that do things that private entities do too, a bus company, right? When is someone who's a foreperson or supervisor in such an entity that happens to be a state or regional entity, when are his or her actions state action? Where do we draw the line? Generally, a public employee acts under color of state law while acting in their official capacity. So in this case, Bristow was acting, and the MTA doesn't dispute this, that Bristow was acting in the course of his official duties throughout the investigation and particularly with respect to December 8th. But all state employees are acting within their official duties when they're working, when they're at work 9 to 5, but when, are they, everything they do state action, or when do we decide that it is state action? I think everything that they do that is within their duties, that is within the authority granted to them by the state, would be state action, which is different from a state employee who just happens to be a state employee but is acting in the ambit of a personal pursuit. Someone who engages perhaps in sexual harassment or Mitchell v. Callen, an MTA, I'm sorry, a police officer who's off duty, shoots a guest in their home. That person just happens to be a state employee, but in no way is relying on or exercising their authority under state law. By contrast here, Bristow is assigned to, he's instructed to keep an eye out for theft at the depot, to keep a count of batteries, and specifically on December 8th, 2012, he's instructed to go to the engine wash, find out what's going on there, and report his findings back to his supervisor. And the findings that he reports back are allegations that plaintiffs have stolen batteries from the depot. He then goes further than that, and explicitly invoking his authority as an MTA bus foreman, tells police that when the plaintiffs left the depot with batteries, or rather when DeFalco left the depot with batteries on December 8th, that he wasn't exercising his ordinary duties as a helper, which sometimes, and this is undisputed, involved removing batteries from the depot, but rather he was engaging in theft. And Bristow knew that, he said, because all equipment movement had to be reported to him, and he knew that DeFalco did not have authority to leave the depot with batteries on that day.  He was Trantell's supervisor. Not DeFalco's. Not DeFalco's supervisor. And it just so happened that two different depots were working out of JFK Depot at that time because of Hurricane Sandy, but there were two different supervisory hierarchies, and it's undisputed that Bristow not only wasn't DeFalco's supervisor on December 8th, that he had never been his supervisor, he didn't know what his schedule was that day, he didn't know what his assignment was that day, he never spoke with his supervisor that day, and he admitted that had a Far Rockaway, which is the depot that DeFalco was assigned to, had a Far Rockaway supervisor instructed DeFalco or permitted DeFalco to leave the depot with batteries on that day, he, Bristow, as a JFK foreman, would not have known about it. Isn't it also the case that he didn't leave the depot with batteries? Yes. It's our position that a reasonable jury... Which a reasonable jury could so find. Absolutely. But even if that weren't the case, what made it theft was this additional allegation that they didn't have authority to leave the depot with batteries on that day. To what extent does it matter that he was sort of deputized to do what a cop might have done if it had been reported earlier to the MTA Police Department, which was to do surveillance, basically, of a particular location? I think it matters to the extent that by giving instructions to keep his eye out for theft at the depot, to keep a count of batteries, to engage in the sort of surveillance that you're referring to, he was given authority by the state to engage in those activities. That became part of his duties as a state employee. Just to follow up on Judge Lynch's question, it seemed as if he was involved not just with these two plaintiffs, but investigations of Williams, Pastora, Rodriguez, and maybe Mercado and Budai. I mean, certainly as to the first three, there's mention of them in the police reports. Am I right about that, that he was kind of a part of a, you know, I won't say task force, but he was working on more than just going there December 8th? He made allegations against a number of employees. The investigation began when Bristow reported to his supervisors that three of his coworkers had told him that they had seen theft at the depot. And for the first three months of the investigation from September up until December 8th, Bristow continued to report theft that allegedly was reported to him by three other employees, all of whom deny in their affidavits having done that. After December 8th too, I saw in the following March he was still- Yes, but December 8th was the first time Bristow claimed to have himself witnessed a theft. And the allegations spanned, there were multiple employees who he made allegations against, and they included Trantell and Pastora, DeFalco, Rodriguez, Budai, and Williams. I think the only allegation was on the day that he actually was stealing batteries and was arrested for that. Thanks very much, Ms. Harris. You're reserved two minutes. Thank you. I've given you some extra time. All right. Ms. Hetchkoff. Good morning, Your Honors. May it please the Court. My name is Helene Hetchkoff. I represent the appellees Detective Brian Longaro and Francis Bristow. The appellant's entire argument in this case is premised on a false assumption that Francis Bristow knowingly and purposely lied about what he saw on December 8th, 2012. That premise is pure speculation. There is nothing in the record to support that assumption. Why do you say that? I mean, there is — aren't there the photographs that are taken out of the window from which he purportedly observed certain things that at least looked to me and, therefore, I assume could look to a reasonable juror as if he could not have seen the things he said he saw. Or at least he couldn't have seen them where he said he saw them. Your Honor, Mr. Bristow in his deposition consistently said that he looked out the window in that building. I think that — and also in his written statement he said the glass door, which seems very clear. The door is not made of glass. The door is solid with a very small window in it. And I think that it would be a leap for a juror to assume —  He said he looked through the glass door. There is no glass door. Correct. There's a glass window. Isn't that something that would indicate that his credibility is suspect? I just don't — I mean, I think you have a lot of interesting arguments here. I was just surprised to hear this one. I thought the one thing that was relatively clear in the case was that there were disputed issues of fact as to whether Bristow did see or could even have seen the things that he said he saw. You're saying that's not a disputable issue of fact? I would say it's not a material dispute of fact for this case because you don't need to go at all in a false arrest case to whether the — whether the crime alleged actually occurred. Wait. But you started out by saying this is what we need to go into, that the entire case of the other side is based on a false premise because it's not true that he didn't see the things or that he lied about what was going on. So if it's totally immaterial, why are we — why are you arguing that it's not a true fact? Your Honor, the question of whether Mr. Bristow could actually see what he claims to have seen that day really only matters for purposes of whether he was acting under State law, under color of law for Section 1983, to get to the point of whether he was a State actor that day. But in terms of the false arrest claim, we could go into the details of the false arrest and whether the — whether the plaintiffs have met each of those elements, and they clearly haven't. There's no — I'm sorry. I'd like to — But that's not what the district court — the district court did not even mention State law false arrest claims and did not reach the merits of a 1983 claim based on false arrest. The issue, I thought, that we were here to address is that the district court said that Bristow is not a State actor. You started out by saying that as a matter of fact, there — it is totally false that Bristow lied about anything. So I don't know — I still don't know why we're even talking about that. But if we are going to talk about it, if you want to raise that issue, I was suggesting to you that that is at a minimum a disputable issue of fact and wondering, first, whether that's right, and secondly, why are we talking about that rather than about the State action issue. I'd like to go back a little bit. I think the dispute here really is whether he knowingly lied about it. There's no evidence in the record that he knowingly lied about what he saw. The evidence is that he — the evidence that's in the record is very clear that he believed he saw what he saw. The evidence is that because he says so. But couldn't a jury infer from the facts that, A, he said he looked through a glass door that does not exist, B, to the extent there is glass in the door at all, you cannot apparently, or a reasonable jury could so find, see what he said he saw, where he said he saw it from that location, C, that he said various people told him that these folks were stealing batteries when they all deny that they told him that, and D, that the supervisor of one of these two plaintiffs contradicts the story of what happened on the day that Bristow said he saw what he saw. Now, if a jury believes all of those facts and concludes that Bristow, in fact, did not see what he saw, given the weight of those things, why couldn't they infer from that that it must have been intentional, that this couldn't be a mistake? I mean, one could be a mistake. Glass door, glass window, who cares? Two could be a mistake. Maybe he saw them with the batteries but not in the washing station. But by the time we're adding to that, that maybe he lied about what other people told him and that, in fact, an uninvolved, apparently neutral witness says, I was talking to DeFalco or Trintell, who drives out DeFalco, that he, the supervisor, Hernandez, was in the truck with him and there were no batteries in it. A reasonable jury could not conclude that Bristow lied intentionally about what he says he saw? Explain to me why they could not, why there is no evidence in the record that supports that theory. Each of those individual, I will take the three affidavits from the three men who worked with Bristow. They don't claim to have been there that day. Bristow was an eyewitness. It's not about that. They say they did not tell Bristow something that Bristow told the police each of them had said. Now, I can think of reasons why they might be lying about that. There's this sort of note that is found on somebody's lunchbox that is a memo that says they reported these things. And I don't know who put it there. And maybe someone put it there to make them feel like they were being accused of being a rat, and then they have to deny it. That's a nice speculative theory. But that's just jury stuff. That's about why, who's telling the truth and why. So why isn't it relevant that besides the issue of what he says he saw, he also said other things that are now contradicted by the people that he's relying on? I don't think that's relevant for this particular eyewitness event. The fact that a man may have credibility issues for other events doesn't make him a bad witness for this particular one. We haven't even gotten to his general credibility. We haven't gotten to his criminal record. We haven't gotten to the fact that he was a thief, because I'm not sure that those are things that the police officer knew that are relevant to that piece of the case. I'm just focused on this business of Trentel and DeFalco. The case against them that Bristow reports has two pieces, right? What he says he saw and what he says other people told him. And they're both highly suspect. A reasonable jury could find that both of those elements were, to say the least, inaccurate. Isn't that right? In order to get to a jury, there would have to be evidence in the record that either of them was inaccurate in order to set up something like that. Yeah, what about the evidence of the affidavits of the three people who deny saying what he attributes to them? And what about the photographs and testimony of the plaintiff's investigator that, if believed, say he could physically not have seen what he says he saw happen? The affidavits don't relate to the December 8th incident. The affidavits don't purport to relate to the — so the fact that they claim that Bristow — that they never told Bristow something — That's part of Bristow's case. That's part of what he tells the police, that they are accusing him of making up a false case against them. That's half the case, is the three other people. The other half of the case is what he says he saw. Right? They're different cases. This case only involved the December 8th, 2012 battery theft. That's the only — that's the only case here. The other cases were against different people in the depot. So those three individuals and their report and their affidavits don't relate to DeFalco and Trentel here. Those are separate issues. Ms. Hechtkoff, your time is up, but I'd like to have the opportunity to ask you a couple of questions and give you an opportunity to help me work through this. Yes, Your Honor. Judge Chen, I believe, indicated, among other things, that there was probable cause for the plaintiff's arrest. Is that right? Yes, there was. And there was a prompt post-suspension hearing for the plaintiffs? Is that right? There was not a prompt post-suspension hearing because the plaintiff's counsel requested that it be held in abeyance pending the criminal case being decided. So what Judge Chen found was that a prompt post-suspension hearing was afforded. Yes, that's correct. Is that right? And she also found that the MTA bus' interest was in immediately suspending individuals who were accused of theft. Is that right? Yes. Now, that may be relevant to the due process claims here, but tell me, why don't you address the issue of qualified immunity, if you think that's relevant here? Did Your Honor want to hear about qualified immunity with regard to Mr. Bristow or Detective Longaro? Either one, or both. Okay. Mr. Bristow, assuming he's a state actor, which we can assume if he's going to get qualified immunity, he must have been a state actor. Well, let's assume he's a state actor. Okay. Was it objectively reasonable for Mr. Bristow to have believed what he was seeing was a crime that day? His supervisor called him as the supervisor drove out of the depot saying, I see something strange happening with DeFalco and Trantell. Can you go and watch them? So he did. It was unusual for a far Rockaway and a JFK employee to be working together. They were separate depots. As Ms. Harris says, they had separate supervisors. It would have been very unusual for that to have been a situation where the two employees from two different depots would be loading batteries or moving batteries together. That was not a normal occasion in this depot. And Bristow, again, was already aware of theft going on at the depot, whether it was because these three other employees told him about it, which they deny now. So he may have been wrong or miscalculated or whatever, but whatever it is he was doing as a so-called state actor, in your view, was not plainly incompetent or bizarre or unreasonable. Is that right? Is that your view? Correct, Your Honor. What about the other one? Detective Longaro, again, same. Was it objectively reasonable for him to have believed what Bristow told him? Taking the issues of Bristow's credibility aside. Most reasonable in the context of qualified immunity includes a range of actions. Is that right? That's right. It's not the reasonable man that we encounter in the law of torts. Is that right? That's right. It's what a reasonable police officer, knowing what Detective Longaro knew at that time. Did Longaro call Suki before the arrests? There's no evidence that he called Suki ever. Suki said, the detective from MTA called me. And at that time, Longaro was the only detective working on the case, right? No, there were other detectives also working on the case. I thought it was handed over to him. It was handed over from the main detective working on it. That was Detective Misik from the Counterterrorism Task Force. And it was handed over to Detective Longaro. But there were other detectives. When Detective Longaro, for example, went to make the arrests, he went with a partner from his office. Was he not the case agent, so to speak? I mean, he's the one in charge of the investigation. Yes, he was in charge. Assuming that somebody else made the telephone call, isn't something a reasonable juror could find that it must have been reported to him because he's the one to whom everyone is reporting about this case? Yes, a reasonable juror could assume that Detective Longaro heard about it, but also But isn't that sort of what, you know, it's not a question of, did he call? We don't know whether he called or he didn't call. The question is, could a reasonable juror make that finding? Because the question that we're going to have to address with respect to qualified immunity, even though that's an issue of law, may depend on disputed issues of fact. Isn't that right? Your Honor, there's no — first, there's no evidence at all that Detective Longaro had any knowledge of this phone call. It doesn't appear in his case records that he spoke with Zucchi. But even if he did — Didn't he say himself that he doesn't know whether he called or didn't call? He says — he also says that he records everything that he does for the case in his file and has. Aren't these exactly questions that go to a jury? If you have a witness who says, a detective from the MTA called me, and Longaro is the person who is in charge of the investigation and the only person in charge, maybe other people are helping him, and, you know, we — somebody's going to have to draw inferences about what actually happened. We don't even have a flat statement from Longaro. I never called anybody to check out that story. We only have at best from him, and I don't remember. And we've got various facts in the record from which people could draw inferences. Right? So that's — that's how this works. Either there's a case that a jury needs to make fact findings before we can decide an issue, which, by the way, the district court never decided in this case. And you're asking us to say, as a matter of law, there's qualified immunity based on a set of assertions, a set of facts that may or may not be correct. Your Honor, there — it's speculation. It's — it doesn't even arise to the level of facts here. So you're saying it is not a reasonable inference that when a key witness in the case says, I said something on the telephone to a detective from the MTA, whose name I don't remember, who called me, and the person — it's not a reasonable inference that the person who is in charge of that investigation either made that call or that someone made it on his behalf and reported back to him. That's not something — that's just speculation. That's not something that could be inferred. There's no record of this call having happened. So I think it is — Oh, so if there's no record of the call having happened, then we simply disbelieve that the call even happened, even though there's a sworn statement that it did? There's a — there's a sworn statement that a call from a detective —  Exactly. That's what I just — that was the premise of my question. Given that, could a reasonable juror infer, is it a reasonable thing for a juror to conclude by a preponderance of the evidence that, more likely than not, this call was either made by Longaro or reported to him? You're saying that is not a reasonable inference. I don't think with more — with more detail — without more detail, I don't think it would be reasonable for a juror to assume that it was somebody active on Longaro's  I'm just trying to find, to conclude. It's an unreasonable inference. What — if I may ask a question. What did Judge Chen — how would Judge Chen, in her opinion, have responded to Judge Lynch's concerns? I believe she called it speculation. And I — just to finish — Well, how did she dispose of — how would she have disposed or did she dispose of the possibility that even if it was speculation, that would be a question of fact? I think she decided it was not a material fact because a reasonable police officer, even hearing that this phone call was made and Mr. Sukey says he never said these things to Mr. Bristow, a reasonable police officer, as Your Honor acknowledged, could decide that there are credibility issues here that don't — Yes, yes, yes. So the real argument that you've got, and I'll be interested to hear the other side's response to this, the real argument that you've got is that it's within — that we have a police officer who, even if it is true that Bristow totally made up 90 percent or all of what he has to say on this subject, that a reasonable police officer doesn't know that about — that Bristow is lying. He has a witness who says this. And basically the only thing that might cast doubt on his credibility known to the officer should have seen — should have looked out that window and made an assessment that, for all we know, he never actually made that observation. And therefore, it's within — it's at least arguable probable cause for the officer. Isn't that really the argument? Yes. And to further bolster or to balance on Bristow's credibility a little bit, before Detective Longaro arrested Mr. DeFalco, the first one of the two to be arrested, a day before he arrested Vincent Williams, who admitted to having stolen bus batteries. So Bristow is not an incredible witness. Good. So Longaro also has a reason to believe Bristow because Bristow's statements about Williams were corroborated. Right. And so all of that goes to the idea that, you know, maybe that does add up to probable cause. He's got a witness who says — he says he's an eyewitness. And maybe after the fact, it turns out he was making it up, and that's a problem. But Longaro doesn't know that. And so maybe he does have probable cause. And at a minimum, maybe he has arguable probable cause. That's right, Your Honor. Okay. Is there anything else you'd like to say to wrap up in the event that we — there have not been enough searching questions? No. Thank you for the time, Your Honor. Or if you have anything, this is your big chance. Thank you. Thank you. All right. All right. We'll hear from opposing counsel, who has reserved a couple of minutes. Ms. Harris, I think the thing I'd like to hear about in light of the end of that conversation is, with respect to Longaro, whom you did not address, why is it not the case that a police officer who has a purported eyewitness telling him, I saw these people in effect stealing batteries, or stating facts that would surely make a person think they were stealing batteries, and has these statements from other folks, even if one of them disputes having given that information, why couldn't a reasonable officer believe, look, I've got the eyewitness. Maybe there are issues with his credibility. That'll get sorted out in due course. But I've at least got a reasonable basis to think that a crime was committed. Why isn't that, at a minimum, arguable probable cause? Your Honor, we don't dispute that in the ordinary course of things, generally, a police officer may rely on a victim informant or an eyewitness to establish probable cause. But that's only true when there aren't reasons to doubt that person's credibility. And in this case, there are substantial reasons that a reasonable jury could have found existed that should have caused Longaro to question his credibility. The principal reason was that a reasonable jury could find that Longaro went to the office, but he didn't really pay any attention. And that's why, in the pictures you can see, it was not possible for anyone to have seen anything happening at the engine wash entrance from the wind. Right. But why do we think that? I mean, you know, what if Longaro just didn't look? He wasn't looking for that. He went to that office, but he wasn't really paying attention or something. There's no evidence that Longaro took pictures or had made observations like the ones that your investigator made. Your Honor, Longaro's testimony, and this is at page 48 of Plaintiff Appellant's opening brief, was that he went to the depot. He recalled being there one time specifically to look at the layout. I'm sure I observed the location where he was standing and what the location the theft was occurring from to see if there was an actual view from that location. And that was before the arrest. And that was before the arrest. Does it matter, then, that the incident occurred December 8th but the arrest wasn't until March 13th? I think it does. In other words, if he had been arrested on March 9th, I mean, I'm sorry, December 9th, it might have been a different story. Is that what you're saying? I think it absolutely would have been a different story. It would have been a different story because he wouldn't have – we don't know exactly what date Longaro went, but he wasn't assigned the case until February. So we can assume no one visited the fuel station office at that time and no one had spoken with Suki, so there wouldn't have been reasons at that time to question Bristow's credibility. But he didn't make the arrest at that time. Instead, they waited three months. And I think that matters also in considering the totality of the circumstances here. This was not a situation where there was an urgent need to make an urgent arrest. The alleged crime happened three months prior. And by the time they got around to making the arrest, they did have reasons to doubt Longaro to conduct some further investigation. And it's undisputed that he conducted no further investigation prior to making the arrest based solely on Bristow's statements. And the district court, because the district court believed there was probable cause, the district court never addressed qualified immunity. That's correct, Your Honor. And if the district court had – well, okay. So we don't have any conclusions about what facts might or might not be in dispute or might or might not be reasonable with respect to if we don't think there's probable cause, you know, maybe some of these nuances would have a big effect on what's reasonable and what's not. That's correct. The district court did not reach that issue. I think that the arguments in support of probable cause are more or less the same arguments in support of qualified immunity because it's the same disputes of fact that are an issue. Well, but then you've got a – you know, then you can take the facts in the light most favorable to you, but you're applying a different standard when one is asking not is this probable cause. Because even on that standard, you say there's not probable cause if the officer has reason to question the credibility of the witness. That can't really be the standard, right? An officer must always have reasons to question the credibility. If I were an officer, I wouldn't necessarily believe what anybody tells me for sure. There's always people have motives. The officer comes upon a fight in the street and they each say the other guy did it. The officer could arrest them both, right, whoever started it, without making a determination that, you know, I believe this guy, I don't believe that guy. There is a dispute. So it would have to be something like strong reasons to question the credibility or reasons such that a reasonable officer could not believe this person. Is that what it has to be? I think the standard is something like you've articulated. There's no question that officers are permitted to and do and must make credibility determinations in the course of conducting investigations. But the argument here is that no reasonable officer, knowing what Longaro knew, and specifically I'm talking about principally that it was not possible to have seen the theft from that location, but also we put it to a jury to make a fact finding as to whether Longaro made these observations that, you know, maybe a reasonable officer would have or should have made. Wouldn't their answer to that question be very significant as to whether it's qualified immunity or not then? I think in order to find qualified immunity without bringing this to a jury, you would have to find that even if Longaro went to the location that he says he went to and observed the view he says he observed and saw that this couldn't possibly have happened, that a reasonable officer still could have relied on Bristow's statement to make the arrest. Thanks very much. Thank you, Your Honor. We appreciate it.